FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 23 2015 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
IRYNE WITEK,

       Plaintiff,

 -against-

CITY OF NEW YORK, et al.,

       Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
MEMORANDUM & ORDER
12-CV-981 (CBA) (VVP)

**AMON, Chief United States District Judge:**

 Plaintiff Iryne Witek, now proceeding pro se, filed this employment discrimination action on February 29, 2012, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e et seq., and 42 U.S.C §§ 1981, 1983. (D.E. # 1, Compl.) More than three years later, resolving this action has proven a Sisyphean task. Witek has been represented by three sets of privately retained counsel in protracted settlement negotiations involving numerous conferences with the Court. Twice, the parties appeared to reach a settlement; both times, Witek reneged on the agreement, creating a conflict of interest that forced two different sets of counsel to withdraw. (See D.E. # 49, 53, 87, 94, 97.) The last apparent settlement yielded a fully executed settlement agreement, resulting in a stipulation of dismissal that was filed by the parties on August 25, 2014, (D.E. # 79), and entered as an order by this Court dismissing the case on September 4, 2014, (D.E. # 80).

 On March 2, 2015, Witek moved to reopen the case[1] and asked the Court to appoint pro bono counsel to represent her. (D.E. # 98, 99.) Both motions were referred to the Honorable Viktor V. Pohorelsky, United States Magistrate Judge, for a Report and Recommendation

---

[1] Witek styles her motion as a "motion to reopen," so the Court refers to it as such throughout this Memorandum and Order. Because Witek seeks to reopen an action that was dismissed by a stipulation of dismissal, however, the Court liberally construes Witek's motion as seeking relief from a final judgment pursuant to Federal Rule of Civil Procedure 60(b) ("Rule 60(b)"). See Laurenzano v. Crossland Sav. Bank, FSB, 837 F. Supp. 514, 515 (E.D.N.Y. 1993) ("A stipulation of dismissal is a final judgment subject to a Rule 60(b) motion.").

1

("R&R"). (D.E. dated Mar. 19, 2015.) Now before the Court is Magistrate Judge Pohorelsky's R&R recommending that both motions be denied. For the reasons stated below, the Court adopts Magistrate Judge Pohorelsky's recommendation that Witek's motion for appointment of counsel be denied, but grants Witek's motion to reopen the case.

## BACKGROUND

Discovery was completed in this employment discrimination action in February 2013. (D.E. # 37.) The parties then sought to settle the case with the Court's assistance—a pursuit that, to date, has not proven successful.

### I. The Apparent Settlement

On April 24, 2013, Magistrate Judge Pohorelsky conducted what was to become the first of many unsuccessful settlement conferences with the parties. (D.E. # 40.) At that time, Witek was represented by the Law Offices of Anthony J. Colleluori & Associates, PLLC ("Colleluori"). When the parties failed to reach an agreement, defendants opted to seek summary judgment. (D.E. # 41.) That motion was to be fully briefed by November 4, 2013. (D.E. dated July 10, 2013.)

While the summary judgment motion was pending, the parties attended three more settlement conferences with Magistrate Judge Pohorelsky. (See D.E. # 42, 44, 45.) The parties appeared at the last of these conferences on September 3, 2013, believing that a settlement had been reached and intending to memorialize the terms of that agreement (the "apparent settlement") on the record. (See D.E. # 47 at 1; D.E. # 102, Ex. A.) That outcome was forestalled when Witek raised several new issues at the September 3 conference. Nonetheless, the parties remained optimistic that an agreement would soon be formalized and sought an adjournment of the summary judgment briefing calendar accordingly. (See D.E. # 46.)

2

When further negotiations failed to produce an agreement, defendants moved to enforce the apparent settlement. (D.E. dated Oct. 10, 2013; D.E. dated Nov. 13, 2013.) Colleluori then moved to withdraw rather than take a position adverse to Witek as to whether the apparent settlement was enforceable and sought a stay of proceedings until that motion was decided. (D.E. # 49.) The motions for summary judgment and to enforce the apparent settlement have been held in abeyance ever since and no progress has been made on the merits of this action. (See D.E. dated Dec. 27, 2013; R&R at 2 n.1.) The Court ultimately permitted Colleluori to withdraw. (D.E. #53.)

## II. The Executed Settlement Agreement

Witek next retained and soon discharged (for reasons not made known to the Court) Aaron David Frishberg as substitute counsel. (D.E. # 62, 73; see also R&R at 2.) Witek then obtained new counsel, Jon L. Norinsberg, (D.E. # 70), and settlement negotiations resumed. Two more settlement conferences were conducted by Magistrate Judge Pohorelsky, (D.E. # 77, 78), resulting in the execution of a settlement agreement by the parties on August 22, 2014. (D.E. # 102 at 2 & Ex. B (the "Settlement Agreement" or the "Agreement") at 3.)

The Settlement Agreement provided, in pertinent part:

- That Witek would receive a single total sum of $100,000, as well as $40,000 in back pay—a total inclusive recovery of $140,000, (Settlement Agreement ¶¶ 2–3);

- That Witek would resign from her position as a nurse within seven days of the Agreement's execution, (id. ¶ 5); and

- That Witek would direct any prospective employers to the New York City Health and Hospitals Corporation's Brooklyn North Network Personnel Department for information regarding her employment and that only certain information would be provided to those prospective employers, (id. ¶ 6).

3

Importantly for the instant motion to reopen, the Settlement Agreement also contained a provision permitting Witek to revoke the agreement within seven days of its execution (the "revocation period"). (Id. ¶ 7.) The Agreement specified that such revocation would only be effective "if an originally executed written notice or revocation [was] delivered to defendants' counsel on or before 5:00 p.m. on the seventh day after the date of plaintiff's execution of the Settlement Agreement." (Id. ¶ 8.) The Agreement further provided that it would "not be effective and enforceable until the Revocation Period has expired." (Id.) By its terms, the Settlement Agreement could thus be revoked by Witek until 5:00 p.m. on August 29, 2014, and the Agreement would not be effective or enforceable until that time. (See id. ¶¶ 7–8.)

### III. Witek's Revocation and Post-Revocation Conduct

On August 25, 2014, before the revocation period had expired, the parties filed a stipulation of dismissal, (D.E. # 79), which was ordered by the Court on September 3, 2014, (D.E. # 80). In the intervening period, however, Witek exercised her right to revoke. On August 28, 2014, Witek delivered the fully executed Settlement Agreement to defendants' counsel; stapled to the Agreement was a handwritten revocation notice signed by Witek. (See R&R at 3.) This revocation appears to have gone unnoticed by counsel for both parties.[2] (See D.E. # 102 at 2–3.) Although Witek claims to have informed her attorney immediately, (D.E. # 98 at 4), he stated at a conference

---

[2] In opposing Witek's motion to reopen, defendants claim to have overlooked the revocation notice because it was stapled to the back of a hard copy of the Agreement that Witek hand-delivered after the fully executed settlement papers had already been exchanged by email. Defendants argue that there was no reason to believe the hard copy would be different from the electronically exchanged copy. (D.E. # 102 at 2–3.) In her objections to the R&R, Witek contends that her revocation note was stapled to the front of the Settlement Agreement, not the back, and that an employee of defendants' counsel had in fact affixed it there. (D.E. # 107 ("Witek Obj."), at 2.) She also identifies two different dates as the days on which she delivered the revocation notice. (Id. at 3.) Because the Court concludes that Witek validly revoked the Settlement Agreement and that her case must therefore be reopened, these factual disputes do not impact the Court's analysis of whether Witek is entitled to relief under Rule 60(b).

4

held several weeks later before Magistrate Judge Pohorelsky that he had no knowledge of the revocation notice, (D.E. # 102 at 2).[3]

Despite her revocation, Witek moved to compel enforcement of the Agreement by letter dated September 18, 2014. (D.E. # 81.) Witek specifically sought two items of information purportedly required by the Agreement: (1) confirmation of her resignation date; and (2) a phone number for prospective employers to call when seeking information about her employment. (Id.) Defendants objected that these items were not required by the Agreement and, in particular, noted that the Agreement required prospective employers to contact defendants in writing rather than by phone; nonetheless, defendants provided confirmation of Witek's resignation date. (D.E. # 82.) Magistrate Judge Pohorelsky held several subsequent conferences with the aim of resolving Witek's concerns and facilitating enforcement of the Agreement. (D.E. # 83, 85, 88, 89.)

On October 20, 2014, Witek informed the Court for the first time that she had revoked the Agreement—the very agreement she had been seeking to enforce for nearly two months. (D.E. # 84.) When it became clear Witek would stand on that revocation, Norinsberg—like Colleluori before him—was forced to withdraw. (See D.E. # 87, 97.) Subsequent efforts to reach a resolution proved unsuccessful, and Witek filed the instant motions to reopen the case and for appointment of counsel. (D.E. # 98, 99.) The Court referred those motions to Magistrate Judge Pohorelsky for report and recommendation on March 19, 2015. (D.E. dated Mar. 19, 2015.)

### IV. Witek's Appeal of the Charging Lien Order

While the instant motions were pending before Magistrate Judge Pohorelsky, this Court adopted in part Magistrate Judge Pohorelsky's recommendation to assess an outstanding charging

---

[3] Norinsberg has not answered this assertion himself; he has instead withdrawn to avoid taking a position adverse to Witek. (See D.E. # 87, 97.) Defendants brought Norinsberg's statement that he had no knowledge of Witek's revocation to the Court's attention in opposing the instant motion. (See D.E. # 102 at 2.)

5

lien asserted by Colleluori after he withdrew as counsel. (D.E. # 113 ("Charging Lien Order").) Specifically, the Court adopted the recommendation that Colleluori's charging lien be assessed in the quantum meruit amount from any recovery Witek ultimately obtains. (Id.) Witek has since appealed the Charging Lien Order to the Court of Appeals for the Second Circuit. (D.E. # 115.)

## STANDARD OF REVIEW

When deciding whether to adopt a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). To accept those portions of the R&R to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." Jarvis v. N. Am. Globex Fund, L.P., 823 F. Supp. 2d 161, 163 (E.D.N.Y. 2011) (internal quotation marks and citation omitted). When specific objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

Witek, now proceeding pro se, filed a letter objecting to the R&R on April 7, 2015.[4] (D.E. # 107 ("Witek Obj.").) Witek was represented by retained counsel from the initiation of this action until she filed the instant motions. Witek is therefore not entitled to any special deference for her conduct throughout the underlying proceedings. The Court has, however, construed the instant motions and related submissions liberally in recognition of Witek's current pro se status. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). Accordingly, in reviewing Witek's objections, the Court is mindful that "[t]he objections of parties appearing pro se are

---

[4] Witek filed an additional letter on November 16, 2015. (D.E. # 122.) This letter reiterates several of the objections raised in Witek's April 7 submission, but also raises concerns about the arbitration process in what Witek calls "my second wrongful termination case." This appears to be an entirely separate lawsuit—indeed, Witek repeatedly asserts that the two cases are "unrelated." Witek has no other cases filed in the Eastern District of New York, and the Court is not otherwise aware of the other proceeding to which Witek refers. To the extent Witek seeks assistance with that proceeding, she must direct her application to the relevant arbitrator or court.

generally accorded leniency," Williams v. Woodhull Med. & Mental Health Ctr., 891 F. Supp. 2d 301, 310 (E.D.N.Y. 2012) (internal quotation marks and citations omitted), and should be "interpreted to raise the strongest arguments they suggest," Triestman, 470 F.3d at 474 (internal quotation marks and citation omitted). "Nonetheless, even a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal." Brown v. Smith, No. 09-CV-4522, 2012 WL 511581, at *2 (E.D.N.Y. Feb. 15, 2012) (quoting Pinkney v. Progressive Home Health Servs., No. 06-CV-5023, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008)). Moreover, even a pro se party may not rely on "new arguments and new evidence raised in objections to a magistrate judge's report and recommendation that were not raised, and thus not considered by the magistrate judge." Grant v. Bradt, No. 10 Civ. 394 (RJS), 2012 WL 3764548, at *4 (S.D.N.Y. Aug. 30, 2012) (internal quotation marks and citation omitted).

Although many of Witek's objections are not material to the recommendations of the R&R, are contradicted by the record, or raise new facts not presented to Magistrate Judge Pohorelsky, the Court has nonetheless construed Witek's submissions to raise the strongest arguments they suggest and, in an abundance of caution, has reviewed both motions de novo in their entirety. The Court addresses Witek's objections where relevant below.

## DISCUSSION

### I. Jurisdiction to Resolve the Instant Motions

While the instant motions were pending, Witek appealed this Court's Charging Lien Order. (D.E. # 115.) The Court must consider the jurisdictional implications of that appeal before adjudicating the pending motions to reopen and for appointment of counsel.

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982). However, the filing of an appeal "only divest[s] the district court of jurisdiction respecting the questions raised and decided in the order appealed from." N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1350 (2d Cir. 1989). Thus, "notwithstanding a pending appeal, a district court retains residual jurisdiction over collateral matters." Tancredi v. Metro. Life Ins. Co., 378 F.3d 220, 225 (2d Cir. 2004).

Applying these principles, the Court must determine whether it retains jurisdiction over each of Witek's pending motions. Witek's motion for appointment of counsel is plainly unrelated to the questions raised and decided in the Charging Lien Order that Witek has appealed. Issues related to attorney compensation are generally treated as collateral to the merits. See, e.g., Tancredi, 378 F.3d at 225 (district court retains jurisdiction over matters collateral to a pending appeal, "including claims for attorney's fees"); see also White v. N.H. Dep't of Emp't Sec., 455 U.S. 445, 452 n.14 (1982) (discussing "collateral character of [attorney's fee] issue[s]"). Accordingly, a district court retains jurisdiction over claims concerning attorney's fees while a merits determination is pending on appeal. See Tancredi, 378 F.3d at 225.

The Court sees no reason for a different outcome in the inverse scenario where, as here, the appeal does not implicate the merits and concerns a wholly collateral attorney-compensation issue. The Charging Lien Order presently before the Second Circuit concerns only a collateral issue: the assessment of a charging lien asserted by Witek's former retained counsel based on the fair and reasonable value of services already rendered. By contrast, the present motion asks the Court to appoint new pro bono counsel for Witek. The order appealed from thus raises legal and

factual questions distinct from and collateral to the motion for appointment of counsel. This Court therefore retains jurisdiction to resolve that motion.

Witek's motion to reopen, which the Court construes as a Rule 60(b) motion,[5] is likewise collateral to the questions raised and decided in the Charging Lien Order. Generally, a district court may entertain and deny a Rule 60(b) motion during the pendency of an appeal, see Fed. R. Civ. P. 62.1(a), but "may grant a [R]ule 60(b) motion after an appeal is taken only if the moving party obtains permission from the circuit court," see Toliver v. County of Sullivan, 957 F.2d 47, 49 (2d Cir. 1992) (emphasis in original). A pending appeal does not divest the district court of jurisdiction to grant a Rule 60(b) motion that "does not affect those aspects of the case involved in the appeal," however. Reed v. Alexander, No. 05-CV-236-JKS, 2009 WL 2390603, at *1 n.1 (N.D.N.Y. July 31, 2009) (citing Griggs, 459 U.S. at 58).

Witek's motion to reopen does not affect those aspects of the case implicated by the pending appeal. The motion to reopen requires the Court to consider whether the facts alleged by Witek justify the extraordinary relief of setting aside a final judgment. The appeal, which concerns the appropriate assessment of Colleluori's charging lien, requires the Second Circuit to consider only those facts relevant to the quantum meruit value of the services rendered by Colleluori.[6]

---

[5] See supra note 1.
[6] Although Magistrate Judge Pohorelsky initially recommended wedding the assessment of the charging lien to the resolution of Witek's motion to reopen, this Court declined to adopt that recommendation or its underlying reasoning. (See Charging Lien Order at 4–5.) Magistrate Judge Pohorelsky recommended that Colleluori's recovery be limited to the terms of the retainer agreement rather than assessed at the quantum meruit amount if Witek's motion to reopen were ultimately denied. (See D.E. # 106 at 9–10.) Colleluori's charging lien was asserted pursuant to New York's attorney lien statute, N.Y. Jud. Law § 475, and is "enforceable in federal courts in accordance with its interpretation by New York courts." Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 449 (2d Cir. 1998). This Court concluded that restricting Colleluori's charging lien to the terms of the retainer agreement was not permitted by New York law. See Lai Ling Cheng v. Modansky Leasing Co., Inc., 73 N.Y.2d 454, 457–58 (1989) ("[T]he attorney is entitled to recover compensation from the client measured by the fair and reasonable value of the services rendered whether that be more or less than the amount provided in the contract or retainer agreement." (emphasis added)); In re Montgomery's Estate, 272 N.Y. 323, 327 (1936) (holding that an attorney discharged without cause is "entitled to recover on quantum meruit the fair and reasonable value of the services rendered . . . without regard to contract price," and affirming a "commit[ment] to the quantum meruit rule without limitation to the contract

9

Because that lien attaches only to any recovery Witek ultimately obtains, see N.Y. Jud. Law § 475, it can be assessed separately and apart from a resolution of the merits and the concomitant determination of Witek's actual recovery. As such, the motion to reopen does not affect the questions raised and decided in the order appealed from. The Court therefore concludes that it retains jurisdiction to adjudicate Witek's Rule 60(b) motion despite Witek's appeal of the Charging Lien Order.[7] See Alexander, 2009 WL 2390603, at *1 n.1.

## II. Motion to Reopen

Witek asks the Court to reopen this action, which was closed pursuant to a stipulation of dismissal entered into by the parties. Witek argues that her case should be reopened because after the stipulation was filed, she validly revoked the Settlement Agreement by delivering a written notice of revocation to defendants' counsel within the period allowed by the Agreement.

---

price"); see also Stair v. Calhoun, 722 F. Supp. 2d. 258, 268 (E.D.N.Y. 2010) ("The theory of quantum meruit, rather than the retainer agreement, is the basis for determining the amount at which to fix the charging lien.").

Instead, this Court concluded that New York law unequivocally requires that a charging lien be assessed in the quantum meruit amount. See, e.g., Stair, 722 F. Supp. 2d. at 268 ("As for the amount at which the charging lien should be fixed, it is [] well settled in New York that . . . a discharged attorney may recover the fair and reasonable value of the services rendered, determined at the time of the discharge and computed on the basis of quantum meruit."); Cohen v. Grainger, Tesoriero & Bell, 81 N.Y.2d 655, 658 (1993) ("[A] discharged attorney may recover the fair and reasonable value of services rendered determined at the time of discharge and computed on the basis of quantum meruit." (internal quotation marks and citation omitted)); People v. Keefe, 50 N.Y.2d 149, 156 (1980) ("[I]f an attorney is discharged without cause he will be allowed a charging lien upon the proceeds of the lawsuit, the amount to be determined on a quantum meruit basis at the conclusion of the case."). The Court assessed the lien accordingly and declined to adopt the R&R to the extent it purported to limit the charging lien to the terms of the retainer agreement, (see Charging Lien Order at 4–5). See 28 U.S.C. § 636 ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.").

[7] Should the Court of Appeals conclude that this Court lacks jurisdiction to grant Witek's motion to reopen, however, this Memorandum and Order should be read as a statement that the Court "would grant [Witek's] motion if the [C]ourt of [A]ppeals remands for that purpose," as well as an explanation of the Court's reasoning. Fed. R. Civ. P. 62.1(a)(3); see also Ret. Bd. of the Policemen's Annuity & Ben. Fund of Chicago v. Bank of N.Y. Mellon, 775 F.3d 154, 159 (2d Cir. 2014) ("Rule 62.1 . . . authorizes a district court whose jurisdiction has been divested by an appeal to state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." (internal quotation marks and citation omitted)).

A party may seek relief from a stipulation of dismissal under Federal Rule of Civil Procedure 60(b). See Laurenzano, 837 F. Supp. at 515. Rule 60(b) provides that a party may seek relief from a final judgment based on the following grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b). "Motions under [R]ule 60(b) are addressed to the sound discretion of the . . . [district] court and are generally granted only upon a showing of exceptional circumstances." Mendell v. Gollust, 909 F.2d 724, 731 (2d Cir. 1990). Moreover, a party seeking relief from "an agreed-upon disposition"—like the stipulation of dismissal Witek now challenges—faces an even "heavier" "burden to obtain Rule 60(b) relief." Nemaizer v. Baker, 793 F.2d 58, 63 (2d Cir. 1986).

Construed liberally, Witek's submissions raise two potential grounds for relief from the stipulation of dismissal: (1) counsel for both parties erred by prematurely filing the stipulation of dismissal before the revocation period had expired; and (2) Witek validly revoked the Settlement Agreement in the manner and within the time period prescribed by its terms; accordingly, no enforceable agreement resolving this action was ever reached by the parties. The Court agrees with Magistrate Judge Pohorelsky that the only clauses of Rule 60(b) that even arguably apply to these claims are Rules 60(b)(1) and 60(b)(6). Magistrate Judge Pohorelsky concluded that Witek is likely entitled to the relief she seeks under both provisions because she validly revoked the Settlement Agreement. Nonetheless, Magistrate Judge Pohorelsky recommended that the Court decline to reopen this action for two reasons: (1) Witek effectively abandoned her revocation by seeking to enforce the Settlement Agreement for nearly two months after her purported revocation;

11

and (2) reopening this action would reward Witek's bad faith conduct and unnecessarily prolong the already protracted proceedings in this action. (R&R at 6–7.)

Although the Court shares Magistrate Judge Pohorelsky's concerns, the Court regretfully concludes that the case must be reopened because the parties never reached an enforceable settlement agreement. "Settlement agreements are contracts and must therefore be construed according to general principles of contract law." Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999). "New York follows the common law rule that, '[i]n interpreting a contract, the intent of the parties governs.'"[8] See PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1199 (2d Cir. 1996) (alteration in the original) (quoting Am. Express Bank Ltd. v. Uniroyal, Inc., 562 N.Y.S.2d 613, 614 (1st Dep't 1990)). Accordingly, to effectuate the intent of the parties, "words and phrases are given their plain meaning." Id. (internal quotation marks and citations omitted).

Here, the Settlement Agreement contains a provision explicitly providing Witek with "seven (7) days following her execution to revoke [the agreement]" by delivering "an originally executed written notice or revocation . . . to defendants' counsel." (Settlement Agreement ¶¶ 7–8.) The Agreement further specified that it would "not be effective and enforceable until the Revocation Period has expired." (Id.) These provisions plainly evince the parties' intent that no enforceable agreement would arise if Witek tendered a notice of revocation in compliance with these provisions. Witek did so by delivering a written notice of revocation to defendants' counsel within seven days of the Agreement's execution; accordingly, by its very terms, the Agreement never became an enforceable contract.

---

[8] The Settlement Agreement explicitly states that it is to be construed in accordance with New York law. (Settlement Agreement ¶ 15.) New York courts generally enforce choice of law provisions. RJE Corp. v. Northville Indus. Corp., 329 F.3d 310, 314 (2d Cir. 2003) (citing Finucane v. Interior Constr. Corp., 695 N.Y.S.2d 322, 325 (1st Dep't 1999)).

12

Although Magistrate Judge Pohorelsky likewise concluded that Witek had validly revoked the Agreement, he reasoned that she had effectively abandoned that revocation through her post-revocation conduct: namely, by seeking to enforce the Agreement. (R&R at 6–7.) Despite this result's intuitive appeal, the Court cannot discern a legal basis supporting this conclusion. The Court has analyzed, for example, whether Witek's post-revocation conduct may have operated as a ratification of the Agreement.[9] The Court has also considered whether promissory or equitable estoppel might bar Witek from now standing on her revocation.[10] But none of these doctrines squarely apply to the facts here, and the Court is hesitant to strain these principles of contract and quasi-contract law to bind a pro se litigant to an unenforceable agreement she wishes to denounce, particularly where doing so vitiates the intent of the parties to that agreement.

Moreover, in her objections, Witek attempts to provide some context for her post-revocation conduct. Witek explains that she did not realize she needed to notify the Court about her revocation because (1) by its terms, the Settlement Agreement only required that the revocation notice be delivered to defendants' counsel, and (2) Witek believed that only her counsel could

---

[9] Although ratification can render a "voidable" contract—an agreement that "[u]nless rescinded . . . imposes on the parties the same obligations as if it were not voidable," Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co., 263 F.3d 26, 31–32 (2d Cir. 2001)—enforceable, Banque Arabe Et Internationale D'Investissement v. Md. Nat. Bank, 850 F. Supp. 1199, 1212 (S.D.N.Y. 1994) aff'd, 57 F.3d 146 (2d Cir. 1995), Witek is not alleging that the Settlement Agreement was voidable; she is alleging (and the Court agrees) that an enforceable agreement was never reached.

[10] "To prevail on a claim of promissory estoppel, a party must show: '1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance.'" Randolph Equities, LLC v. Carbon Capital, Inc., 648 F. Supp. 2d 507, 523 (S.D.N.Y. 2009) (quoting Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000)). Witek's post-revocation conduct cannot be described as a "clear and unambiguous promise" to be bound to the Agreement. Nor was any reliance by defendants obviously reasonable or foreseeable. The Agreement allowed Witek to revoke by delivering a written notice of revocation to defendants' counsel within seven days, which she did; that defendants chose not to examine the documents Witek delivered to their office closely hardly renders any subsequent reliance "reasonable."

The elements of equitable estoppel are even less obviously applicable here. "A plaintiff asserting equitable estoppel must show, on the part of the party being estopped: '(1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts.'" Randolph Equities, LLC, 648 F. Supp. 2d at 524 (quoting In re Vebeliunas, 332 F.3d 85, 93–94 (2d Cir. 2003)). There is no evidence that Witek made a false representation or concealed material facts, let alone that she did so with an intent that defendants rely on such a misrepresentation.

13

contact the Court. Moreover, Witek claims that she did not know her case had been dismissed and therefore did not seek to reopen the case sooner. (Witek Obj. at 3.) These assertions fall far short of justifying Witek's conduct, particularly the fact that she affirmatively sought to enforce the Agreement she had already revoked, engaging the Court, her counsel, and defense counsel in two months of unnecessary and contentious litigation. Indeed, the Court finds Witek's objections to be somewhat disingenuous. But the Court can imagine how a represented litigant might not be aware of the precise procedural posture of her case and might hesitate to contact the Court directly. The Court is therefore reluctant to construe Witek's post-revocation conduct—indefensible as it may be—as giving rise ex post facto to an enforceable agreement.

The Court therefore determines that no enforceable settlement agreement was entered into by the parties, a conclusion which now compels the Court to grant Witek's motion to reopen. Review of the record makes plain that the parties filed the stipulation of dismissal with the mistaken understanding that an enforceable settlement agreement had been reached. Having concluded that no such agreement was effectuated, the Court will not enforce a stipulation of dismissal unquestionably entered into and filed by counsel for both parties based on a mutual mistake of fact. See Fed. R. Civ. P. 60(b)(1) (district court may relieve party from a final judgment because of "mistake, inadvertence, surprise or excusable neglect"); see also Nemaizer v. Baker, 793 F.2d 58, 63 (2d Cir. 1986) ("Relief from a counsel's error is normally sought pursuant to Rule 60(b)(1). . . .").

The Court is mindful that, ordinarily, "dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief." Nemaizer, 793 F.2d at 62. But this is not a case where Witek's attorney simply "fail[ed] to evaluate carefully the legal consequences of a chosen course

14

of action." Id. Here, Witek's attorney lacked the information—known only to his client—that would have enabled him to even predict, let alone analyze the legal consequences of, the subsequent developments in this action. Norinsberg executed a stipulation of dismissal because a fully executed settlement agreement had been exchanged by the parties; nothing in the record suggests that Norinsberg had any indication at that time that Witek would later revoke.[11]

Of even more concern is the possibility that, given Witek's position that a settlement was not reached—a conclusion with which the Court reluctantly agrees—defendants could conceivably refuse to pay Witek the agreed-upon settlement amount. Were the Court to decline to reopen, this action could therefore result in dismissal of Witek's claims with prejudice, without any recovery or recourse for her and without an adverse adjudication on the merits. The need to avoid such an unjust outcome leads the Court to conclude that "there are extraordinary circumstances justifying relief" from the final judgment in this case. Nemaizer, 793 F.2d at 63 (construing Fed. R. Civ. P. 60(b)(6)).

The Court is troubled by this result, which would appear to reward Witek's vexatious and dilatory conduct throughout the course of this litigation—conduct that arguably evidences a bad-faith approach in her dealings with both her counsel and defendants. The Court is also conscious that reopening the case is not entirely fair to defendants, who have exercised good-faith efforts to settle this litigation for more than three years and who continue to incur the costs of Witek's illusory commitments to resolution. Moreover, the Court, like Magistrate Judge Pohorelsky, has no confidence that reopening this action will facilitate a just resolution on the merits. Nonetheless, the legal posture of this case requires that it be reopened. The Court therefore grants Witek's

---

[11] Even if the Court credits Witek's claim that she informed Norinsberg on August 29, 2014, that she had revoked the Agreement, (Witek Obj. at 3), Norinsberg had already signed the stipulation of dismissal, which was filed on August 25, 2014. There is thus no evidence on the record, even on Witek's unsupported account, suggesting that Norinsberg had reason to believe that a settlement had not been reached.

15

motion to reopen. When litigation resumes, Witek will thus confront either reopened settlement negotiations, revived summary judgment briefing, or a renewed motion to enforce an earlier apparent settlement.

### III. Motion for the Appointment of Counsel

There is no right to the appointment of pro bono counsel in civil matters. See Burgos v. Hopkins, 14 F.3d 787, 789 (2d Cir. 1994). "Rather, the district court has the discretion to appoint counsel." Id. Magistrate Judge Pohorelsky recommended that the Court exercise its discretion to deny Witek's request, primarily because she has proven unable and unwilling to work with or accept the advice of counsel. (See R&R at 8.) After reviewing the request de novo, the Court sees no reason to exercise its discretion differently.

"Volunteer lawyer time is a precious commodity." Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir. 1989). And the Court is mindful that "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause. We cannot afford that waste." Id. The Court will not waste this district's scarce pro bono resources on a client who will not cooperate with or benefit from representation by counsel. See Barnes v. Alves, 10 F. Supp. 3d 382, 385 (W.D.N.Y. 2014) (declining to appoint civil pro bono counsel to plaintiff whose "prior treatment of . . . counsel led to the withdrawal of that counsel"); Davidson v. Scully, No. 83 Civ. 2025 (DNE), 1984 WL 1360, at *4 (S.D.N.Y. Dec. 18, 1984) (declining to appoint civil pro bono counsel to plaintiff who "could not cooperate with" prior counsel). The Court agrees with Magistrate Judge Pohorelsky that Witek has proven unwilling and unable to work with counsel: she has privately retained three different sets of counsel in this action and has twice forced counsel to withdraw by creating a conflict of interest and due to an irrevocable

breakdown of the attorney-client relationship. Accordingly, the Court adopts the recommendation of the R&R and denies Witek's motion for the appointment of pro bono counsel.

## CONCLUSION

For the reasons stated above, the Court grants Witek's motion to reopen, but declines to appoint pro bono counsel to Witek. The Clerk of Court is directed to reopen the case.

SO ORDERED.

Dated: December 23, 2015
Brooklyn, New York

s/Carol Bagley Amon

_____
Carol Bagley Amon
Chief United States District Judge